# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JULIE RAIM n/k/a Julie Redmond,

    Defendant.

No. 05-CR-86-CJW-MAR

**CERTIFICATION OF FACTS REGARDING DEFENDANT'S CONTEMPT, REPORT, AND RECOMMENDATION**

_____

Before me is the Government's Motion for Order to Show Cause Why Defendant Should Not Be Held in Civil Contempt. (Doc. 213.) This is the second opportunity I have had to certify facts to the Court regarding Defendant's alleged contempt for failure to pay the restitution judgment entered against her. My prior Report and Recommendation (Doc. 192) was adopted by the Court (Doc. 207) after a supplemental hearing. (Doc. 206.) Defendant was previously held in contempt and sentenced to 30 days' imprisonment for her failure to make payments on the restitution judgment. (Doc. 207.)

The Government's motion alleges that Defendant has not made any voluntary payments toward restitution and willfully evaded/obstructed the Government's efforts to garnish Defendant's wages. The Government seeks an order requiring Defendant to make an immediate payment of the amount of $5,629.18[1] and, in the event payment is not made, a sentence of 90 days' imprisonment.

---

[1] This amount is consistent with the Government's brief (Doc. 213-1) and the calculation contained in Government Exhibit 9.

1

Defendant has not filed any resistance. At the hearing, Defendant's attorney stated, "Ms. Redmond admits she is in contempt by failing to pay by the terms of her agreement. We take no position on the other allegations made." (Tr. at 24.)

I held a hearing on the Government's motion on July 28, 2026. (Doc. 237.) Government's Exhibits 1-10 were admitted without objection. The Government called one witness, Michelle Yetley. I found Ms. Yetley highly credible. Defendant filed no resistance.

## I. CERTIFICATION OF FACTS

### A. Previously Certified Facts

I certified the following facts in my previous certification:

On May 23, 2006, the Court sentenced Defendant to 33 months of imprisonment for wire fraud in violation 18 U.S.C. § 1343. As part of the Court's judgment, Defendant was ordered to pay $87,332.18. The record is replete with the Government's efforts to collect on the judgment. It includes two instances where Defendant's supervised release was revoked for, among other things, her failure to pay a financial penalty. (Doc. 180-1 at 2.) As the judgment aged, the Government's enforcement efforts have increased. In other words, this is a case where the Government has a legitimate concern that the judgment may become unenforceable before Defendant has satisfied it. "The liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined." 18 U.S.C. § 3613.

The most recent collection efforts are summarized as follows: On December 7, 2022, Defendant did not appear for her Judgment Debtor Exam. (Doc. 176.) The Government filed a Motion for Default which was granted. (Docs. 177 and 178.) Default was entered on November 1, 2023. (Doc. 179.)

On March 28, 2024, the Government filed a Motion for Order to Show Cause Why Defendant Should Not be Held in Civil Contempt. Also filed with the Motion is a Brief and Exhibit 1 (which is a copy of Defendant's repayment history). The Government's motion and brief requested that the

Court find Defendant in contempt of court and sentence her to 30 days of imprisonment. The Government further requested the Court withhold mittimus on the sentence and establish a minimum monthly payment amount and provide Defendant six months to show she can comply with the payment schedule and cure her contempt. (Doc. 180.)

A Show Cause hearing was set for May 8, 2024, at which time Defendant appeared personally and the hearing was continued to June 18, 2024 to allow the parties to reach an agreement. During said hearing, I advised Defendant of her right to an attorney because of the possibility that she could be facing jail time. (Docs. 182 and 183.)

On June 18, 2024, I held a Show Cause hearing. At said hearing, Defendant was personally present and discussed her efforts to hire an attorney. I directed the CJA Panel Administrator to appoint Defendant counsel and the Show Cause hearing was continued to July 16, 2024. (Doc. 184.) On June 18, 2024, I appointed Charles D. Paul to represent Defendant. (Doc. 187.)

At the Show Cause hearing on July 16, 2024, Defendant appeared personally with her attorney Charles D. Paul. The Government was represented by Martin J. McLaughlin. At the July 16, 2024 Show Cause hearing, the Government offered into evidence a "Contempt Agreement" which provides as follows:

### CONTEMPT AGREEMENT

Defendant, Julie Raim, admits she is in contempt of court for willfully failing to pay her restitution obligation of $40,412.34 imposed in CR 05-86. In exchange for the below agreement to pay, the United States and Defendant have agreed to recommend to the Court that a 30-day contempt sentence be imposed. The parties have further agreed to recommend the 30-day mittimus to be withheld for 6 months to allow Defendant an opportunity to cure her contempt.

Defendant, Julie Raim, will agree to pay $400.00 per month, pursuant to this contempt agreement. The first payment of $400.00 will be due on August 1,2024. Each additional payment will be due by the 1st day of the next month for a total of $2,400.00 due by January 1, 2025.

3

> If Defendant pays $400 each month by the beginning of each month and pays $2,400.00 in 6 months, mittimus shall not enter.
>
> If Defendant does not pay $400 each month by the beginning of each month and $2,400.00 in 6 months, Defendant will be committed to the custody of the Bureau of Prisons for 30 days.

(Doc. 190-1.)  The Agreement is signed by Defendant.

At the July 16, 2024 hearing, I held a colloquy with Defendant (very similar to my standard colloquy at a Rule 11 guilty plea) to ascertain whether Defendant was competent, understood her rights, and was voluntarily waiving those rights.  I concluded Defendant was competent, understood her rights, and was waiving her rights to contest the contempt allegations.  I also established by Defendant's admissions that she had willfully failed to pay her restitution obligation; i.e., that she had money to pay the obligation, but willfully refused to do so.  I further concluded that Defendant should be found in contempt but agreed to hold my certification of that contempt in abeyance to afford Defendant an opportunity to cure her contempt.

As stated above, the Government's Notice indicates Defendant failed to make a $400 payment on August 1, 2024, [Defendant made an additional restitution payment on December 20, 2024, which was evidenced in an exhibit defendant presented to the Court at the December 20, 2024 hearing.][2]

(Doc. 192.)

## B.    *Additional Facts*

Defendant has not made any payment since December 20, 2024.  (Ex. 1, Doc. 213-2.)  In 2025, the Government was still seeking to collect the restitution judgment. An Application for Writ of Continuing Garnishment was filed on July 17, 2025 listing A

---

[2] The Court made this correction when it adopted my prior certification of facts.  (Doc. 207 at 2-3.)

Plus Accounting ("A+") as the Garnishee. (Doc. 208.) The Government believed Defendant was working for A+ at this time. Government Exhibit 2 shows email correspondence between A+ and the Government about the garnishment.

Michelle Yetley's testimony is necessary to understand how Defendant became personally involved in responding to the garnishment. Ms. Yetley is an accountant working for A+ as an operations partner. A+ has offices in Cedar Rapids and North Liberty, but Ms. Yetley, who manages both branches, primarily works in North Liberty. Defendant was hired to work in the A+ Cedar Rapids office in February of 2025, and Ms. Yetley started managing that office in May of 2025. Defendant was hired as an administrative assistant to work the front desk reception handling telephones, meeting walk-in clients, and receiving information. Ms. Yetley knew Defendant by "Julie Redmond," which appears to be Defendant's married name.[3]

Ms. Yetley testified that Exhibit 3 is an Iowa Department of Revenue Notice of Employer Wage Levy ("the Iowa levy") pertaining to Defendant dated December 1, 2025 which Ms. Yetley entered into the A+ payroll system. Defendant discussed the Iowa levy with Ms. Yetley but Defendant never mentioned a federal garnishment or her federal criminal convictions. (Tr. at 7-8.) Exhibit 6 is a "Pay Stub Detail" from July of 2025 to February 20026 that shows, *inter alia*, the satisfaction of the levy. (Tr. at 9.) In addition, Exhibit 6 shows Defendant was subject to a wage deduction because she used the A+ credit card to purchase personal meals. (Tr. at 9-10.) Thus, the Iowa levy and some other debts Defendant owed were ultimately satisfied from Defendant's wages.

Exhibit 6 does not show, however, any deduction for a federal garnishment. Exhibit 7 is what the Government identifies as a "Signed Certified Mail Card" and which Government's counsel referred to as a "Proof of Service." (Doc. 223-3, Tr. at 11.)

---

[3] Exhibit 4 is a credit application submitted by "Julie Ann Redmond" which Defendant listed A Plus Accounting as her employer.

The Proof of Service card is undated and Ms. Yetley testified she was "guessing" it was signed by David Paulson, who had been a CPA in the Cedar Rapids office. (Tr. at 11-12.) Standing alone, it is not entirely clear that Exhibit 7 has anything to do with the garnishment relating to Defendant's restitution judgment. It does not reference the instant case and no one from the U.S. Attorney's Office, for example, testified about its relationship to the garnishment process. In the context of the evidence discussed below, however, it is clear only Defendant herself received any notice of the garnishment on behalf of A+.

Mr. Paulson did not tell Ms. Yetley that he had received a federal garnishment or that he had signed for something. (Tr. at 12.) The normal process would be for the receptionist, such as Defendant, to receive such a notice and "get it to" Ms. Yetley. (*Id.*) Ms. Yetley, however, did not receive the federal garnishment from Defendant.

Nevertheless, someone filled out an Answer of Garnishee on behalf of A+ that purports to be signed by Ms. Yetley in response to a Writ of Continuing Garnishment Served on A+ in August, 2025.[4] (Ex. 5.) Ms. Yetley recognized the handwriting on the answer[5] as Defendant's handwriting. (Tr. at 13.) Ms. Yetley testified that neither she nor anyone else from A+ filed the answer to her knowledge. (Tr. at 12.) Ms. Yetley only learned of the federal garnishment in June of 2026 when contacted by the U.S. Attorney's Office. (Tr. at 13.) Ms. Yetley denied her signature appears on Exhibit 5.

Ms. Yetley testified that if she had received a federal garnishment pertaining to Defendant, A+ would have withheld money to turn over to the United States. (Tr. at 14.) Government's Exhibit 9 shows Defendant's net wages of $22,516.50 and, assuming a garnishment of 25%, a total amount that would have been garnished from Defendant's

---

[4] The date is unclear, but it appears to be August 22 or 23.

[5] The Government's questioning referred to Exhibit 5 at certain points as "the garnishment," but it is clear from the context that Ms. Yetley recognized the handwriting on the Answer of Garnishee as Defendant's handwriting.

wages of $5,629.13. Ms. Yetley testified that amount contains an error in Defendant's favor because Defendant would have received another payment in February 2026. (Tr. at 15.)

Exhibit 2 contains, *inter alia,* emails between "admincr@[XXXXX].com" and the Government, that is, a usdoj.gov address. The administrative assistant in the Cedar Rapids office would have had access to this A+ email account. Ms. Yetley believes that she and the "admin" from the North Liberty office would also have access to this account. (Tr. at 20.) Ms. Yetley did not email the Government. (Tr. at 16.) Exhibit 2 also contains a subpoena to produce documents which Ms. Yetley never received. (*Id.*) Nor does Ms. Yetley know who provided documents requested by the Government on behalf of A+. (*Id.*) Page 9 of Exhibit 2 is an email from admincr signed by Defendant in which she states, "Sorry, I am corresponding for Michelle on some of her emails while she is gone." Ms. Yetley testified:

> Q. And then you'll see on page 9 there's suddenly an email actually signed by Ms. Redmond as administrative assistant saying she's corresponding for you on some of the emails while you're gone. I see that that's dated December 17th. Were you gone?
> A. I -- I don't know that -- if I was in that office. I didn't check. But I was not there regularly. It was intermittent.
> Q. Would Ms. Redmond correspond for on you emails [sic]?
> A. Not usually.
> Q. And was she to correspond for you on topics such as this?
> A. No.

(Tr. at 17.) Defendant was ultimately terminated from A+ because she used a client's bank account to pay a personal bill. (*Id.*)

## II. CONTEMPT AUTHORITY

The Federal Rules of Civil Procedure permit enforcement of a judgment by, among other means, holding the defendant in contempt of court. Fed.R.Civ.Pro.70(e). As the Government noted in its prior efforts to enforce the Court's judgment:

The criminal restitution statute allows the government to enforce the restitution order "in the manner provided for in subchapter C of chapter 227 (18 U.S.C. §§ 3571-3574) and subchapter B of chapter 229 (18 U.S.C. §§ 3611-3615) of Title 18 or "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(i) and (ii). Fed.R.Civ.Pro.70 is an available means to enforce the restitution this court ordered in 2006.

Title 18 U.S.C. § 3613 states the United States may enforce a judgment imposing a fine (or restitution) using the practices and procedures for enforcing a civil judgment under federal or state law. Rule 70 of the Federal Rules of Civil Procedure is one of those procedures that can be used to enforce this restitution judgment.

Further, Title 18 U.S.C. § 3613A provides an array of sanctions the Court may impose to obtain compliance with the Court's order of restitution. Title 18 U.S.C. § 3613A(a)(1)(a) states:

> that the Court, on a finding of default on restitution may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation of supervised release, resentence a defendant pursuant to section 3614, hold defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of fine or restitution.

(Doc. 180-1 at 5-6.)

The contempt authority of a United States Magistrate Judge is set forth in 28 U.S.C. Section 636(e). Only subsection 636(e)(6) applies in the case at bar:

(e) Contempt authority.--

 . . .

(6) Certification of other contempts to the district court.--Upon the commission of any such act--

. . .

8

(B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where--
(i) the act committed in the magistrate judge's presence may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,
(ii) the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge, or
(iii) the act constitutes a civil contempt,

the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. *The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.*[6]

28 U.S.C. § 636(e)(6) (emphasis added).

"A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000) (citing *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir.1998)). If the movant produces clear and convincing evidence, "the burden . . . shift[s] to the [alleged contemnors] to show an inability to comply." *Id.* (citation omitted).

When imposing a civil contempt sanction, the record must reflect that the Court considered the following four factors: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may

---

[6] In the prior contempt proceeding, the Court set a hearing on the Report and Recommendation. (Doc. 199.)

9

impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Edeh v. Carruthers*, No. 10-cv-2860 (RJK/JSM), 2011 WL 4808194, \*3 (D. Minn. Sept. 20, 2011) (citing *United Mine Workers*, 330 U.S. at 303–04).

*Natl. Credit Union Administration Bd. v. Cumis Ins. Socy., Inc.*, No. 16-CV-139 (DWF/LIB), 2018 WL 6288110, at \*3 (D. Minn. Oct. 22, 2018), report and recommendation adopted, No. CV 16-139 (DWF/LIB), 2018 WL 6271044 (D. Minn. Nov. 30, 2018).

### III.   ANALYSIS

Here, there is no dispute regarding Defendant's failure to comply. The Government has shown by clear and convincing evidence that Defendant has not made any payment on the restitution judgment since the last contempt proceeding. Defendant unquestionably knew about the existence of the restitution judgment against her. In addition, the Government has shown, again by clear and convincing evidence, that Defendant had the means to make payment. This is shown by the fact Defendant was earning wages from A+ and, if that garnishment effort had not been thwarted by Defendant's efforts, the garnishment would have led to a reduction in the balance owed on the garnishment. The records from Defendant's employment at A+ show how much she was making and that a successful garnishment would have yielded over $5,000 to the Government. Moreover, Defendant has admitted she is in contempt for her nonpayment. (Tr. at 24.)

Defendant's actions in response to the garnishment upon A+ is relevant to whether Defendant violated the Court's order. Defendant's actions also tend to negate any belief that Defendant was unable to comply with the Court's order, that the inability to comply was not self-induced, or that Defendant made reasonable, good-faith efforts to comply. *Chicago Truck Drivers*, 207 F.3d at 506.

10

The evidence here shows Defendant prepared the Answer of the Garnishee on behalf of A+ using Ms. Yetley's name without her permission. Moreover, Defendant corresponded with the Government on behalf of A+ without A+'s authority. The evidence suggests that even if Mr. Paulson signed for the service of the garnishment documents, Defendant herself was the person who responded on behalf of A+. Ms. Yetley did not respond, either by sending the emails or preparing the Answer, but someone responded for A+. There is no suggestion that the other administrative assistant who may have had access to the email account "admincr" had any reason to know of the garnishment or a motive to respond. This leads to the conclusion that Defendant undertook to respond to the garnishment herself as evidenced by her handwriting on the answer. Moreover, use of the email address "admincr" to discuss the case with the Government is consistent with Defendant completing the answer herself. Defendant's email responses appear to show she knew she was not authorized to respond for her employer because she did not initially disclose her true identity and referred to herself in the third person. (Ex. 2 at 1). She also claimed (contrary to Ms. Yetley's testimony) that she was merely corresponding on Ms. Yetley's behalf in Ms. Yetley's absence. (*Id.* at 9.)

Ultimately, the Government need not show that Defendant acted willfully to establish its entitlement to a finding of contempt. However, I conclude that the actions Defendant took while employed at A+ relative to the garnishment preclude the conclusion that Defendant lacked the ability to comply. Any "inability" to comply was self-induced by Defendant's actions. Moreover, the actions make it impossible to find that Defendant made reasonable, good-faith efforts to comply with the Court's order.

I also conclude that the factors gleaned from *United Mine Workers* weigh in favor of imposition of the requested sanction. First, the harm from Defendant's noncompliance is not merely the nonpayment of the judgment. Here, the noncompliance actively

11

thwarted the Government's collection efforts and would have been successful but for Defendant's intervention. Second, the probable effectiveness of the sanction weighs in favor of the requested sanction. Unfortunately, I can think of no sanction short of the imposition of a jail sentence that would persuade Defendant to (a) pay the judgment; and (b) cease activities to interfere with the Government's collection activities. Third, the financial resources of the contemnor and the burden the sanctions may impose weigh in favor of the proposed sanction. The evidence tends to show that Defendant is employable and her employment would yield to payment of the debt. Again, but for Defendant's efforts to thwart payment the balance of the judgment would have been appreciably reduced. Finally, Defendant's actions demonstrate her willfulness in disregarding the court's order. Thus, the fourth factor also weighs in favor of the imposition of the sentence requested by the Government.

### IV.    CONCLUSION AND RECOMMENDATION

I certify to the District Court the above facts which support my recommendation:

(a)     that Defendant Julie A. Raim n/k/a Julie Redmond should be found in contempt of Court,

(b)     that she should be sentenced to a term of imprisonment and remanded to the custody of the United States Marshals Service or the Bureau of Prisons, as the Court deems appropriate, for a term of 90 days, and

(c)     that a warrant for her arrest should be issued.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district

court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **DONE AND ENTERED** at Cedar Rapids, Iowa, this 12th day of August, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

Case 1:05-cr-00086-CJW-MAR    Document 238    Filed 08/12/26    Page 13 of 13